

**DAVID M. ESKEW**
(646) 970-7342 (direct dial)
deskew@aellaw.com
aellaw.com

**256 Fifth Avenue, 5th Floor**
**New York, New York 10001**

> Defendants' request for an extension is granted. Defendants' opposition to the Government's cross-motion is due June 10, 2025. The Government's reply is due June 15, 2025. The conference currently scheduled for May 28, 2025 is adjourned until June 17, 2025 at 10:30 a.m. in Courtroom 15C, 500 Pearl Street, New York, NY 1000.
>
> SO ORDERED.
>
> May 27, 2025
>
> *LEWIS J. LIMAN*
> United States District Judge

**BY ECF**

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. LabQ Clinical Diagnostics, LLC, et al.*,
      No. 22 Civ. 10313 (LJL)

Dear Judge Liman:

  We respectfully submit this letter on behalf of the LabQ Defendants[1] in reply to the government's submission, dated May 23, 2025 (the "Government's Cross-Motion"), which opposed the LabQ Defendants' motion, dated May 20, 2025 ("Defendants' Motion"), and cross-moved for an order to show cause as to why the LabQ Defendants should not be held in civil contempt for violating the 8/2 Order. We submit this letter to reply to provide a response to certain of the arguments in the Government's Cross-Motion and to ask the Court for 14 days to submit an opposition supported by evidence and legal argument. Because the Defendants' Motion and the Government's Cross-Motion raise legal issues and factual matters that are intertwined, we further ask the Court to adjourn the hearing scheduled for Wednesday on Defendants' Motion to a date after the Government's Cross-Motion can be fully briefed.

  As a preliminary matter, the Government concedes in its Cross-Motion that not all the expenses sought by the LabQ Defendants were improper. Specifically, the Government stated, "[w]hile the Government does not allege that all of these transfers were improper, many plainly were." Government's Cross-Motion at 6. In conceding that many of the transfers were for proper business expenses, the Government does not explain why it has taken an "all or nothing" approach to consenting to relief under the 8/2 Order. As we said in the Defendants' Motion, the LabQ Defendants long ago made clear to the Government that they were *not seeking relief from the Writs for any of the contested transactions*. And yet, the Government has not consented to any reasonable

---

[1] Terms not defined in this letter have the same meaning ascribed to them in the LabQ Defendants' Motion and/or the Government's Cross-Motion.

business expenses or personal expenses under the 8/2 Order since the entry of the order nine months ago. On this basis alone, the Government's approach is patently unreasonable.

With respect to the other transactions for which the LabQ Defendants are not seeking relief, the dispute between the parties boils down to a fundamental disagreement regarding the scope of the 8/2 Order. The Government contends that the Transferee Defendants—namely, National Toxicology Center (NTC), Unitec Laboratory Inc. (renamed OvaLab), Care Bio Clinical Corp, Bronx Urgent Care MSO, CareQure LLC, and Sequreit LLC—do not fall within the scope of the 8/2 Order's allowance to pay Covered Expenses, reading the 8/2 Order to cover only the LabQ Defendants explicitly. According to the Government, "[s]uch payments violate the [8/2 Order] because they are not payments of the LabQ Corporate Defendants' expenses, but instead disbursements to other entities Landau owns that have the effect of dissipating the assets subject to the Writs." Government's Cross-Motion at 8.

The Government's reading of the 8/2 Order is overly technical and too narrow. As set forth in the Defendants' Motion, and as conceded in the Government's Cross-Motion, the so-called Transferee Defendants *are part* of the LabQ Defendants' business network. The Transferee Defendants—all owned in whole or in part by Mr. Landau—form the infrastructure needed to operate LabQ's business, including contracts with insurance providers and critical back-office operations. The expenses to which the Government objects relate to laboratory testing, operations in specific states, clinical services in underserved communities, medical billing, and information-technology services, all related to the LabQ Defendants' business operations. These expenses were all incurred and paid in the ordinary course of business and were reasonable and necessary to conduct LabQ's business. In its Cross-Motion, the Government seems to concede that it was well-aware that the Transferee Defendants were owned (at least in part) and controlled by Mr. Landau. Indeed, the Government cites deposition testimony from Mr. Landau in which Mr. Landau stated that certain of the Transferee Defendants were owned and controlled by him. And the Government cites an email that indicates that Ovalab is an extension of LabQ's business. The LabQ Defendants and the Transferee Defendants are all part of one business operation, though they may be made up of separate legal entities. The LabQ Defendants have never wavered on that point, and the Government has known these facts all along.

The two transfers identified by the Government totaling $27,485.31 to Har Hazayis'm Realty LLC, are also for reasonable business expenses associated with the LabQ Defendants' businesses. As the LabQ Defendants explained to the Government, these funds paid rent and expenses for 100 International, the location of LabQ's business operations in New Jersey. The Government suggests this must be untrue because 100 International is owned by a single purpose real estate entity named 100 International LLC but the Government knows very well that Har Hazayis'm Realty LLC is the entity that manages all of the real estate owned by Mr. Landau. That is why the LabQ Defendants asked the Government in March to permit payment to this entity to pay taxes, mortgages, maintenance costs, insurance and other expenses on the very collateral the Government has restrained with its Writs. And that is why the LabQ Defendants are now asking the Court to modify the 8/2 Order to explicitly permit such expenses. If accommodation is not made to pay the expenses for the Restrained Properties, the 8/2 Order will have no meaning because no lender would provide a mortgage on collateral that is at-risk.

The Government makes plain its unreasonable position with its approach to the expenses for the Restrained Properties and its refusal to permit Ovalab to close on the 125th St. Property. Indeed, the Government concedes that it would rather lose approximately $1.2 million in equity securing any future judgment in this case than allow the LabQ Defendants to close on the 125th Street Property, place a writ on that property with the LabQ Defendants' consent, and thereby further secure its contemplated future judgment with a $12 million asset. The Government's position is punitive, spiteful, and contrary to the interests of all parties. This same reasoning is on display with respect to the Restrained Properties. For months, the LabQ Defendants have asked that those properties' expenses be included as Covered Expenses under the 8/2 Order. Again, the parties' interests are aligned. The Government could have no good reason to have the Restrained Properties securing its contemplated future judgment fall into disrepair or be foreclosed on. The Government now seems to agree. *See* Government's Cross-Motion at 20 ("With respect to Har Hazayis'm Realty LLC's expenses, contrary to Defendants' suggestions, the Government has informed Defendants that it is willing to discuss expenses relating to the properties that are subject to the Writs.").)

With respect to the Government's request for an order to show cause as to why the LabQ Defendants should not be held in civil contempt for violating the 8/2 Order, the LabQ Defendants would like an appropriate amount of time to prepare an opposition that includes evidence and legal argument. As a general matter, there is no basis to hold the LabQ Defendants in contempt where, as here, the premise of the Government's Cross-Motion is an overly narrow, hyper-technical, and incorrect reading of the 8/2 Order. Even if the Court were to agree with the Government's reading of the 8/2 Order and find that the LabQ Defendants cannot include expenses of the Transferee Defendants in the ambit of LabQ's reasonable business expenses under the 8/2 Order (even though such entities are part of and facilitate LabQ's business operations), the terms of the 8/2 Order were hardly so clear and unambiguous or the LabQ Defendants' conduct so contemptuous to justify a contempt finding. As the Second Circuit has repeatedly emphasized, "a contempt order is a "potent weapon," *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76 (1967), that is inappropriate if "there is a fair ground of doubt as to the wrongfulness of the defendant's conduct," *Cal. Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618 (1885). "A contempt order is warranted only where *the moving party* establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995) (emphasis added). The "*movant* must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* (emphasis added). *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

The Government cannot meet its burden here. Nonetheless, the LabQ Defendants would like to submit a fulsome opposition to clarify the record and properly oppose the Government's Cross-Motion. The Government's submission consists of, among other things, a 30-page memorandum of law and two declarations with 16 exhibits. The LabQ Defendants need more than two days to adequately respond to such a motion. Moreover, the Government filed the Cross-Motion after the start of the Jewish Sabbath on Friday evening. As the Court and Government are aware, Mr. Landau is a Rabbi and a strict observer of the Jewish Sabbath. This effectively left one day to review and respond to the Government's lengthy submission. In accordance with the Court's

Local Rules, we respectfully request 14 days to prepare and submit an opposition to the Government's Cross-Motion. Accordingly, the LabQ Defendants respectfully request that the Court adjourn the hearing on Defendants' Motion scheduled for Wednesday for at least two weeks to permit the LabQ Defendants to properly respond to the Government's Cross-Motion and to permit the Court to resolve both the Defendants' Motion and the Government's Cross-Motion, which are intertwined, at the same time.

\* \* \*

Based on the foregoing, the LabQ Defendants respectfully request that the Court: *(i)* modify the 8/2 Order to explicitly permit the sale of Restrained Properties in order to fund reasonable business expenses, personal expenses, and legal fees; *(ii)* modify the 8/2 Order to explicitly permit reasonable business expenses for the LabQ Defendants, Transferee Defendants, and HH Realty; *(iii)* permit relief from the Writs to pay the full amount of outstanding and future reasonable business expenses, personal expenses, and legal fees, as requested in the Defendants' Motion; and *(iv)* relief from the Writs to pay $10,000,000 to complete the purchase of the 125th St. Property.

We thank the Court for its consideration of this matter.

Respectfully submitted,

ABELL ESKEW LANDAU LLP
256 5th Avenue, 5th Floor
NY, NY 10001

/s/

By: David M. Eskew, Esq.
(646) 970-7342
deskew@aellaw.com
*Counsel to Moshe Landau*

cc:   all counsel of record (via ECF only)