**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RESOLUTE 3 LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>LABQ CLINICAL DIAGNOSTICS, LLC, *et al.*<br><br>　　　　　　Defendants. | No. 22 Civ. 751 (LJL) |
| UNITED STATES OF AMERICA, the STATE OF NEW YORK, and the STATE OF NEW JERSEY *ex rel.* NJ CHALLENGER LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>LABQ CLINICAL DIAGNOSTICS LLC *et al.*,<br><br>　　　　　　Defendants. | No. 22 Civ. 10313 (LJL) |
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff-Intervenor,<br><br>　　　v.<br><br>LABQ CLINICAL DIAGNOSTICS, LLC *et al.*,<br><br>　　　　　　Defendants. | No. 22 Civ. 751 (LJL)<br>No. 22 Civ. 10313 (LJL) |

**THE UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CONTEMPT REMEDIES**

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Counsel for United States of America*
86 Chambers Street, 3rd Floor
New York, New York 10007

RACHAEL DOUD
LAWRENCE FOGELMAN
CHARLES S. JACOB
MOLLIE KORNREICH
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
  – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...........................................................................................................1

FACTUAL BACKGROUND..............................................................................................................2

    A.    The Government's Motion for Contempt ................................................................2

    B.    The Court Found Defendants in Contempt..............................................................3

ARGUMENT......................................................................................................................................4

    I.    Legal Standard ........................................................................................................4

    II.    The Court Should Order Defendants to Return the Illegally Transferred Funds and Impose a Penalty If They Fail To Do So.................................................8

CONCLUSION.................................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                                                                                      **PAGE(s)**

*Aviv v. Brainard*,
    18 cv 5088 (PKC), 2018 WL 10529738 (S.D.N.Y. Aug. 30, 2018) .................................. 7

*CBS Broadcasting Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d Cir. 2016) ............................................................................................... 4

*Citigroup Inc. v. Sayeg*,
    21 Civ. 10413 (JPC), 2022 WL 1620298 (S.D.N.Y. May 23, 2022) ........................ 7, 8, 9

*GE Med. Sys. Info. Tech., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ............................................................................................. 5

*In re Various Grand Jury Subpoenas*,
    248 F. Supp. 3d 525 (S.D.N.Y. 2017) .............................................................................. 4

*Matter of Dickinson*,
    763 F.2d 84 (2d Cir. 1985) ............................................................................................... 7

*S.E.C. v. Bankers All. Corp., No. C.A.*,
    95-0428 (PLF), 1995 WL 590665 (D.D.C. May 5, 1995) ......................................... 6, 7, 8

*S.E.C. v. Current Fin. Servs., Inc.*,
    798 F. Supp. 802 (D.D.C. 1992) ...................................................................................... 7

*S.E.C. v. Zubkis*,
    97 Civ. 8086 (JGK), 2003 WL 22118978 (S.D.N.Y. Sept. 11, 2003) .............................. 5

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008) .............................................................................. 7

*United States v. Paccione*,
    975 F. Supp. 537 (S.D.N.Y. 1997) ................................................................................ 5, 6

**STATUTES**

28 U.S.C. § 3104(a) ............................................................................................................. 10

The United States of America (the "Government") respectfully submits this memorandum of law in support of its motion for contempt remedies against Defendants LabQ Clinical Diagnostics LLC, Community Mobile Testing, Inc., Dart Medical Laboratory, Inc. (collectively, the "LabQ Corporate Defendants"), and Moshe Landau (collectively with the LabQ Corporate Defendants, the "Defendants") for their violation of the Stipulation and Order entered by the Court on August 2, 2024 (Dkt. No. 60[1]) (the "August 2024 Order" or the "Order").

## PRELIMINARY STATEMENT

On July 7, 2025, the Court found that Defendants violated the clear and unambiguous terms of the August 2024 Order by improperly transferring hundreds of thousands of dollars from accounts subject to the Governments' Writs to bank accounts held by separate legal entities associated with Landau for no consideration. *See* Tr. of July 7, 2025, Hr'g at 38:9-39:20 ("Hr'g Tr."); *see also* Dkt. No. 574. The Court held Defendants in civil contempt of the Order and ordered the parties to submit briefing on the appropriate sanctions. Hr'g Tr. at 46:15-19; Dkr. No. 574.

As the Government stated in its Memorandum of Law in Support of Its Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, *see* Dkt. No. 535 at 19 ("Contempt Brief"), the Court should require Defendants to return the funds they transferred in violation of the Order. Those funds, which amount to $685,548.69, should be placed in escrow, to be available to satisfy the Government's judgment in the event it prevails on its False Claims Act claims. The Court should also impose a daily penalty on Defendants if they do not return the funds by the deadline set by the Court.

---

[1] All citations herein are to the docket numbered 22 Civ. 10313.

## FACTUAL BACKGROUND

A. The Government's Motion for Contempt

On May 23, 2025, the Government filed its Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt for violating the August 2024 Order. Dkt. No. 534 ("Contempt Motion"). In its Memorandum of Law in support of the Contempt Motion, the Government detailed improper transfers to entities owned and/or controlled by Landau, including transfers to, or for the benefit of, Care Bio Clinical Corp., Unitec Laboratories Inc. d/b/a OvaLab, National Toxicology Center d/b/a Thomas G. Rosano PhD LLC, Bronx Park Urgent Medical, CareQure LLC, Sequreit LLC, and Har Hazayis'm Realty LLC. Contempt Br. at 10-14. Attached as Exhibits A and B to the Declaration of Rachael Doud dated July 14, 2025, which is filed herewith, are spreadsheets reflecting a total of $685,548.69 in transfers to these entities. The transactions reflected in Exhibits A and B are a subset of the transactions contained in Exhibits 2 and 3 to the May 23, 2025, Doud Declaration, Dkt. Nos. 536-2 and 536-3.

In their opposition to the Government's Contempt Motion, Defendants did not dispute the accuracy of any of the transaction information reflected Exhibits 2 and 3, or that the payments to Care Bio Clinical Corp., Unitec Laboratories Inc., National Toxicology Center, Bronx Park Urgent Medical, CareQure LLC, and Sequreit LLC were for expenses incurred by those entities, and not the LabQ Corporate Defendants. Dkt. No. 555. Instead, Defendants argued that payments to these other entities were permitted by the August 2024 Order because they were all "under the corporate umbrella of Defendant CMT." *Id.* at 2. Defendants claimed that the payments to Har Hazayis'm Realty LLC were for "Rent and Expenses for 100 International, which is the location of LabQ operations in NJ." May 23, 2025, Doud Decl. Ex. 2; Ex. 3. As the Government pointed out, however, 100 International is owned by 100 International LLC, not Har Hazayis'm. *Id.* Ex. 11.

2

Defendants proffered no evidence, such as a rental agreement, demonstrating how payments to Har Hazayis'm, which does not own the property at 100 International, could plausibly constitute rent payments owed by Defendants for LabQ's use of the building.

### B. The Court Found Defendants in Contempt

The Court held a hearing on the Government's Contempt Motion on July 7, 2025, *see* Dkt. No. 574, and at the end of the hearing, the Court issued its ruling on the Government's motion. Specifically, the Court held that the August 2024 Order is clear and unambiguous and "does not permit defendants to use their bank accounts to transfer moneys for no consideration to bank accounts held by separate legal entities associated with Landau that are not subject to any restraint and that were not at the time defendants who would ultimately be found liable for [a False Claims Act] violation." Hr'g Tr. at 38:9, 15-21.

The Court also held that the proof of noncompliance is "clear and convincing." *Id.* at 38:22. The Court noted that, "[s]ince the issuance of the August 2024 order, defendants have transferred over $2 million out of the accounts subject to the government's writs, without seeking or obtaining prior approval from the government or the Court," and concluded that "[a] portion of these transfers violated the order." *Id.* at 38:23-39:3. In particular, "LabQ and Dart Medical made transfers to different legal entities organized as separate limited liability corporations under relevant state laws, for which LabQ and Dart Medical did not receive any consideration." *Id.* at 39:3-7. This included "$475,000 to Care Bio Clinical Corp.; Unitec Laboratories, Inc. (now called OvaLab); National Toxicology Center; Bronx Park Urgent Medical; CareQure, LLC; and SequreIt, LLC (collectively, the "Transferee Entities"), which were variously characterized by defendants as 'payroll,' 'expenses,' and 'rent' for the transferee entities." *Id.* at 39:8-14. The Court observed that these "are clearly not payments to third parties for services rendered or goods sold to the LabQ

3

defendant entities, nor do defendants make any argument that they are." *Id.* at 39:14-17.

The Court rejected Defendants' argument that the payments were permitted because the Transferee Entities and CMT Mobile testing "share a corporate parent" as "def[ying] the plain language of the August 2024 order." *Id.* at 39:21-25. The Court held that "defendants offered no evidence that would suggest any attempt to comply with the August 2024 order with respect to the transfers in question." *Id.* at 45:7-9. The Court "therefore [found] defendants in civil contempt." *Id.* at 45:9-10. The Court ordered the Government submit a motion for contempt sanctions by no later than July 14, 2025. Dkt. No. 574.

## ARGUMENT

To purge their contempt, the Court should order Defendants to return the funds that were transferred from the accounts subject to Writs in violation of the August 2024 Order and place those funds in escrow, to be available to the Government should it prevail on its False Claims Act case. The Court should order Defendants to return the funds by a date certain, and impose penalties if Defendants fail to do so and until they do. A proposed order is submitted herewith.

### I. Legal Standard

Upon a finding of civil contempt, courts provide the party in contempt with the opportunity to purge the contempt. *See In re: Various Grand Jury Subpoenas*, 248 F. Supp. 3d 525, 527 (S.D.N.Y. 2017). If the party does not succeed in purging the contempt, the Court may impose sanctions. *Id.* (citing *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016) (noting that findings of contempt, combined with notice of daily fines, provided sufficient opportunity to purge contempt)).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics*

*Electromedia Commercial, Ltd. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). However, sanctions for civil contempt "may not be imposed as a purely punitive measure." *Id.* Courts have broad discretion to fashion an appropriate remedy, and generally consider the following factors: "(1) the character and magnitude of the harm threatened by the contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction." *S.E.C. v. Zubkis*, 97 Civ. 8086 (JGK), 2003 WL 22118978 at *4 (S.D.N.Y. Sept. 11, 2003); *see also, e.g.*, *Paramedics Electromedia Commercial, Ltd.*, 369 F.3d at 657-58. In selecting the appropriate contempt sanction, "a court is obliged to use the least possible power adequate to the end proposed." *United States v. Paccione*, 975 F. Supp. 537, 545 (S.D.N.Y. 1997).

Where a party has violated a court order by transferring money, courts have ordered the return of that money in order to purge the contempt, with penalties to be incurred if the party fails to do so. For example, in *JSC Foreign Economic Assciation Technostroyexport v. International Development and Trade Services, Inc.*, No. 03 Civ. 5562 (JGK) (AJP), the court held the defendant in civil contempt for frustrating an attachment order by transferring funds to other accounts and failing to comply with discovery obligations. *See* Doud Decl. Ex. C (attaching *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Services, Inc.*, No. 03 Civ. 5562 (JGK) (AJP), Dkt. 557 (May 1, 2006)). In the lead up to the sanctions order in *JSC Foreign Economic Association Technostroyexport*, the plaintiff was concerned that the defendant was disposing of assets that could be used to satisfy an eventual judgment in the plaintiff's favor and obtained an order of attachment against the defendant's assets. *Id.* at 3-5. However, the plaintiff's efforts to attach applicable property were frustrated by the defendant's failure to comply with her discovery obligations. *Id.* at 5-6. Magistrate Judge Peck concluded that certain funds paid to the defendant

and subsequently transferred would likely have been subject to the Court's attachment order had the defendant complied with her discovery obligations, and directed her to repatriate the funds from Israel, where she had transferred them. *Id.* at 6. The defendant failed to comply with that order, asserting that she was unable to do so because the funds had been used to pay her attorneys. *Id.* at 7-8. Judge Koeltl held the defendant in contempt of Magistrate Judge Peck's order that she return the funds, and ordered that, to purge herself of the contempt, she was required to promptly repatriate the funds, to be placed in the Marshal's custody. *Id.* at 19. The court further held that if the defendant did not comply within twenty days, the plaintiff could apply for "further sanctions, including incarceration, until such time as [the defendant had] purged her contempt" of the order. *Id.*

In *S.E.C. v. Bankers All. Corp.*, No. C.A. 95-0428 (PLF), 1995 WL 590665 (D.D.C. May 5, 1995), similarly, the court held the defendants in civil contempt of a preliminary injunction issued by the court, which required them to provide information concerning the location and disposition of certain funds and to repatriate those funds. *Id.* at *1. The court "concluded that the excuses proffered by defendants for their failure to comply with these provisions of the Preliminary Injunction were inadequate and that their conduct was contumacious," and ordered them to comply with the order by returning the funds. *Id.* at *1, 18. The court also ordered, among other penalties, that "commencing on the date of the Order accompanying th[e] Opinion, each of these defendants shall pay a fine of $25,000 per day for the first five days after the date of entry of the Order, $50,000 per day for the next five days, $75,000 per day for the next five days, and $100,000 per day until such time as they purge their contempt or until further order of the Court." *Id.* at *18. The court also ordered that one of the defendants "shall be arrested and incarcerated until he has complied with the Court's Order because he has the most to offer regarding the location of the

6

investor funds and is in a position to repatriate the funds." *Id.* The court in *S.E.C. v. Current Fin. Servs., Inc.*, 798 F. Supp. 802 (D.D.C. 1992), also held defendants in contempt and ordered them to return diverted funds or face daily penalties. *See id.* at 809 (holding defendants in civil contempt of provisions of temporary restraining order freezing assets; requiring them "to employ their best efforts to restore all funds removed or diverted . . . in violation of the Court's Orders within 30 days of the date of this Order"; and ordering that "failure to purge the contempt as set forth above may result in a civil monetary penalty up to $77,000 . . . plus an additional penalty per day until the contemnors comply with the Court's Orders").

Courts have imposed daily fines ranging from hundreds of dollars to hundreds of thousands of dollars to secure compliance with a court order after a finding of contempt. *See, e.g.*, *Matter of Dickinson*, 763 F.2d 84, 87-88 (2d Cir. 1985) (affirming imposition of a $1500 fine on Dickinson, who refused to testify despite a court order requiring him to do so, "for each day he persists in his refusal to testify"); *Citigroup Inc. v. Sayeg*, 21 Civ. 10413 (JPC), 2022 WL 1620298, at *3 (S.D.N.Y. May 23, 2022) (court initially imposed daily fines of $5,000 per day for the first nine days, $10,000 per day for the next nine days, and $15,000 per day thereafter to secure defendant's compliance with order requiring him to withdraw claims in Mexican action); *Aviv v. Brainard*, 18 cv 5088 (PKC), 2018 WL 10529738, at *3 (S.D.N.Y. Aug. 30, 2018) (imposing an initial fine of $5,000 upon defendants for failure to comply with a court order requiring them to disclose their assets, followed by an additional fine starting at $1,000 but doubling "each week thereafter that the contemnor fails to comply fully" with the court's orders); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008) (holding that "an initial contempt sanction of $100,000 per day, doubling to $200,000 per day thirty days thereafter, and to $400,000 per day thirty days after that, and continuing to double every thirty days until

compliance is achieved is an appropriate remedy to ensure probable compliance with this Court's orders," where contempt meant that multi-billion dollar enterprise was "paralyzed from taking important corporate action, including disbursement of hundreds of millions of dollars in potential dividends," and the defendants had "enormous financial resources"); *see also Bankers All. Corp.*, 1995 WL 590665, at *18 (escalating fines starting at $25,000 per day imposed in 1995).

### II. The Court Should Order Defendants to Return the Illegally Transferred Funds and Impose a Penalty If They Fail To Do So

As in the cases cited above, the Court should require Defendants to return the funds transferred in violation of the August 2024 Order to purge their contempt. The Court should also subject the Defendants to daily penalties if they do not return the payments by the deadline set by the Court. The Government submits that that $5,000 per day is an appropriate starting daily penalty amount, with an escalating penalty structure similar to that imposed in *Citigroup Inc. v. Sayeg*, 2022 WL 1620298, at *3—*i.e.* increasing to $10,000 per day after ten days and continuing to increase every ten days thereafter until compliance is achieved.

As noted above, and illustrated by Exhibits A and B to the July 14, 2025, Doud Declaration, the amount of funds that should be returned is $685,548.69. *See supra* at 1. In its bench ruling, the Court noted that "LabQ and Dart Medical transferred $475,000 to . . . the Transferee Entities." Hr'g Tr. at 39:8-9. While the Government noted in its reply brief that "Defendants do not dispute they transferred over $475,000 to [the Transferee Entities]," the sum of the payments at issue is $685,548.69. The Government's opening Contempt Brief described each of these categories of payments at issue in detail. Contempt Br. at 10-14. They include:

- Over $100,000 to or for Care Bio Clinical Corp., reportedly for payroll and expenses of Care Bio;
- Over $123,000 to or for Unitec Laboratories Inc., reportedly for expenses of OvaLab/Unitec;

8

- Over $20,000 to the founder and laboratory director of National Toxicology Center, reportedly for payroll and expenses of National Toxicology Center;

- Over $30,000 to Bronx Park Urgent Medical, reportedly for payroll and expenses of Bronx Park Urgent Medical;

- Over $310,000 to CareQure LLC, reportedly for payroll for CareQure LLC;

- Over $70,000 to Sequreit LLC, reportedly for payroll for Sequreit LLC; and

- Over $27,000 to Har Hazayis'm Realty, LLC, reportedly for rent for 100 International.

The Government anticipates Defendants will argue that they should not be required to return the funds because the Transferee Entities transferred other funds to the LabQ Corporate Defendants during the same time frame. Defendants raised this issue to the Government for the first time on July 11, 2025. July 14, 2025, Doud Ex. D. Defendants did not provide any information concerning the purpose of the transfers to the LabQ Corporate Defendants, or contend that these funds constituted repayments of amounts previously disbursed by the LabQ Corporate Defendants to these entities. *Id*. In any event, Defendants' transfers from accounts subject to Writs to other corporate entities owned or controlled by Landau violated the clear terms of the August 2024 Order, whether or not those entities separately made other transfers to the LabQ Corporate Defendants.

The returned funds should be placed in escrow, to be available to satisfy the Government's judgment in the event it prevails on its False Claims Act claims. The Federal Debt Collections Practices Act provides that, if the relevant requirements are met, "[a] court may issue a writ of garnishment against property (excluding earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor in order to satisfy a claim for a debt." 28 U.S.C. § 3104(a). It does not provide an exception permitting the debtor to use these funds for expenses. The Government nonetheless agreed to carve-outs for certain specified, reasonable expenses. However, Defendants abused the agreed-

9

upon order by using the accounts subject to Writs to pay other expenses and thereby drain the value of the accounts subject to Writs. In light of this conduct, the returned funds should be maintained in an escrow account to satisfy the Government's potential judgment in this case (or to be available to Defendants if they prevail in this lawsuit), rather than permitting the returned funds to be made available for Defendants to spend now.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order Defendants to return the funds they transferred in contempt of the August 2024 Order and impose penalties if they fail to do so.

Dated: July 14, 2025
      New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:   /s/ *Rachael Doud*           .
RACHAEL DOUD
LAWRENCE FOGELMAN
CHARLES S. JACOB
MOLLIE KORNREICH
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728/2725/2689
rachael.doud@usdoj.gov
lawrence.fogelman@usdoj.gov
charles.jacob@usdoj.gov
mollie.kornreich@usdoj.gov
danielle.marryshow@usdoj.gov