

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

August 8, 2025

**BY ECF**
Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States of America v. LabQ Clinical Diagnostics, LLC, et al.*
No. 22 Civ. 751 (LJL), No. 22 Civ. 10313 (LJL)

Dear Judge Liman:

This Office represents the United States of America in this False Claims Act case. Pursuant to this Court's order, Dkt. 588[1], and ahead of the status conference currently scheduled for August 13, 2025, at 10:00 AM, the parties submit the following information regarding the status of the case.[2]

**1. All existing deadlines, due dates, and/or cut-off dates.** The Court-established deadlines are set forth by order of this Court dated July 15, 2025 (attached hereto as Exhibit A). Dkt. 588. The Court extended the deadline for Moshe Landau, LabQ Clinical Diagnostics LLC, Community Mobile Testing Inc., and Dart Medical Laboratory Inc. (the "FCA Defendants") to produce responses to the Government's Requests for Production 1, 2, 19-22, 31, 33, and 36-39 from July 30, 2025, to August 6, 2025, while denying the FCA Defendants' request for a two-week extension of that deadline. Dkt. 670.

**2. A brief description of any outstanding motions.** Three motions are outstanding.

First, the Government filed a motion for contempt remedies for the FCA Defendants' violation of the Stipulation and Order entered by the Court on August 2, 2024 (the "August 2024 Order"). *See* Dkt. 584-587. This motion followed the Court's determination on July 7, 2025, that the FCA Defendants violated the clear and unambiguous terms of the August 2024 Order by improperly transferring hundreds of thousands of dollars from accounts subject to the Government's writs to bank accounts held by separate legal entities associated with Moshe Landau for no consideration. *See* Dkt. No. 574; Tr. of July 7, 2025, Hr'g at 38:9-39:20 ("Hr'g Tr."), Dkt.

---

[1] All citations are to the docket numbered 22 Civ. 10313 (LJL).

[2] The parties request that the Court accept this letter, which is over the 3-page limit, as the parties wanted to provide their positions in detail regarding anticipated remaining discovery in this case.

595. The Court held the FCA Defendants in civil contempt of the August 2024 Order and ordered the parties to submit briefing on the appropriate sanctions. Dkt. No. 574; Hr'g Tr. at 46:15-19.

Second, the FCA Defendants filed a cross-motion for reconsideration of the Court's rulings on July 7, 2025, Dkt. 591-594, including the Court's ruling regarding contempt and the Court's denial of the FCA Defendants' motion for modification of the August 2, 2024 Order, Dkt 574.

Third, the Government filed a motion requesting that the Court so-order deadlines for the FCA Defendants to produce (i) non-privileged phone-based text communications (*i.e.*, text messages) for their employees that are responsive to the Government's Requests for Production, and (ii) a data dictionary that describes the patient data recently produced to the Government. The Government also seeks leave to depose Moshe Landau on two occasions during discovery, once for purposes of financial discovery, and a second time for purposes of merits discovery. Dkt. 673.

**3. A brief description of the status of discovery and of any additional discovery that remains to be completed.**

***Discovery Produced by the Government.*** The Government has received and responded to 126 Requests for Production ("RFPs") and 59 interrogatories served by the FCA Defendants. Further, in response to the FCA Defendants' RFPs and as part of the Government's Rule 26 disclosures, the Government has produced approximately 143,475 pages of documents to the FCA Defendants, including HRSA documents relating to the Uninsured Program, documents obtained by the Government during its investigation, claims data relating to FCA Defendants' submission of claims for payment to the Uninsured Program and private insurance companies, and documents relating to communications between an HHS-OIG employee and Dart Medical Laboratory Inc., among other materials. In addition, the Government's responses to the FCA Defendants' interrogatories identified multiple witnesses on topics identified by the FCA Defendants.

***Discovery Produced by the FCA Defendants.*** As authorized by the August 2024 Order, on August 13, 2024, the Government issued 29 requests for production seeking financial discovery from the FCA Defendants. On September 30, 2024, the Government issued 39 requests for production to the FCA Defendants relating to the underlying merits of this action. With regard to merits discovery, the FCA Defendants have produced 1,756,599 pages of patient and claims information (bates stamped CLAIMS_Q_00000001 - CLAIMS_Q_01756599), and 454 pages of sample patient information (bates stamped D_000001-D_000454). The FCA Defendants have also produced 19,384 pages of financial discovery in response to the Government's financial discovery requests. The FCA Defendants partially responded to one interrogatory for financial discovery without a verification, and the Government sent the FCA Defendants a letter contesting the sufficiency of the response on August 8, 2025. The FCA Defendants provided responses and objections to one interrogatory for merits discovery issued to Moshe Landau, and one interrogatory for merits discovery issued to LabQ Clinical Diagnostics LLC and Dart Medical Laboratory Inc.

***Third-Party Discovery and Depositions.*** The Government and the FCA Defendants have also issued third-party subpoenas seeking documents from various entities. The FCA Defendants and the Government have not yet commenced taking depositions while document productions are still ongoing.

***Government's Position on Additional Discovery to be Completed.***

  ***i. Merits Discovery***

  As described in the Government's letter to the Court dated August 1, 2025, *see* Dkt. 667, the FCA Defendants missed an interim merits discovery deadline and the Government is concerned that the FCA Defendants will continue to miss additional deadlines, especially in light of their willful failure to pay a vendor $36,162.38 resulting in a purported loss of "access to their email server" and "certain cloud-based storage." Dkt. 665. Specifically, the FCA Defendants missed their July 30 deadline to produce merits discovery responsive to the Government's requests for production 1, 2, 19-22, 31, 33, and 36-39. Dkt. 667. The FCA Defendants sought a two-week extension of this deadline on July 30, based on their purported inability to access their server, Dkt. 665, but the Court rejected the FCA Defendants' request, finding their proffered excuse "not persuasive," *see* Dkt. 670. The Court extended Plaintiffs' deadline to August 6, 2025, Dkt. 670, but the FCA Defendants missed this deadline as well. Upcoming discovery deadlines are even *more* dependent on access to emails and cloud-based storage – specifically, the FCA Defendants must gather emails from relevant personnel, process those emails, run search terms and produce responsive, non-privileged documents by September 18, 2025. Yet the FCA Defendants claim they cannot access their email servers to collect all of these documents.[3]

  The FCA Defendants' failures to meet the July 30 and August 6 discovery deadlines, and their likely failure to meet future deadlines if they fail to restore access to their server, are of the FCA Defendants own making and smack of a willful disregard of their discovery obligations. The FCA Defendants have simply *chosen* not to pay the vendor who maintains their email access and cloud-based storage. At the same time that the FCA Defendants received invoices from this vendor from April to July 2025, the FCA Defendants mortgaged three of their properties not encumbered by any writs to raise over $1.1 million. *Compare* Dkt. 665 (attaching invoices from vendor) *with* Dkt. 669 (demonstrating mortgages on properties owned by Moshe Landau resulting in more than $1.1 million). The FCA Defendants also mortgaged a fourth property that *is* subject to a writ of attachment, in violation of the Court's August 2024 Order (Dkt. 60 ¶ 3), for an additional $372,459. Dkt. 669. But the FCA Defendants did not use those funds to pay their vendor. Likewise, while the FCA Defendants allowed access to these vital records necessary to litigate the case to lapse, the FCA Defendants made large payments to other companies controlled by Landau in excess of $685,000, in violation of the Court's August 2024 Order. Dkt. 667.

  The FCA Defendants' claim that they simply cannot pay their vendor is also belied by the factual record developed to date that demonstrates that the FCA Defendants have access to substantial assets that they simply refuse to access or even disclose. Landau owns a property in Tiberias, Israel that he admitted purchasing. Dkt. 535 at 22-23; Dkt. 536 Ex. 5 at 168:24-169:2 ("I bought a house in Tiberias for two million and change."). Bank records obtained by the Government also demonstrate that Landau transferred at least $1.5 million for property in Israel. Dkt. 599 Ex. 4. In addition, Landau owns an additional 25 properties that he failed to disclose to the Government as required by the August 2024 Order, Dkt. 60 ¶ 9, three of which he just

---

[3] The FCA Defendants have said that they obtained *some* emails prior to the self-induced shutdown of their server.

mortgaged for over $1.1 million as described above, Dkt. 535 at 23; Dkt. 669. Landau also failed to disclose his ownership interest in the LLC that holds the Malon Resort hotel that Landau purchased for $14,580,000. Dkt. 535 at 23-24.

In addition to these issues, the Government requested by letter motion filed this afternoon that the Court set a deadline of October 1, 2025, for the FCA Defendants to collect and produce all non-privileged phone-based text communications that are responsive to discovery requests, and that the Court so-order a deadline of August 30, 2025 for the FCA Defendants to produce a data dictionary necessary to understand the various fields and data entries in FCA Defendants' claims data. Dkt 673.

### ii. Financial Discovery

On July 25, 2025, the Government moved to compel the production of financial discovery. Dkt. 599 (the "Motion"). The Court granted the Government's motion by order dated July 30, 2025, holding that "Defendants shall produce all outstanding financial discovery as set forth in the Government's letter of July 25, 2025, no later than August 4, 2025." Dkt. 664. The Court also rejected the FCA Defendants' attempt to modify this order to one requiring "substantial completion" only by August 4, and stated that "the Court's July 30, 2025 order was clear and unambiguous." Dkt. 670. The FCA Defendants made a supplemental production on August 4, 2025, but that production is incomplete and in violation of the August 4, 2025 deadline. The FCA Defendants again blamed their failure to produce a complete response to the Government's financial interrogatory request and request for documents relating to the FCA Defendants' corporate entities and partnerships on their "current issues with email and server access," indicating that they will "supplement these responses" upon receiving documents that they requested from "their accountants and attorneys" in light of their inability to access their own documents. The Government submitted a letter to the FCA Defendants on August 8, 2025, outlining the deficiencies in their August 4, 2025 production, including the failure of each of the FCA Defendants to verify their interrogatory responses as required by Federal Rule of Civil Procedure 33(b)(3). The Government will seek further relief from the Court in the absence of prompt compliance by the FCA Defendants to produce outstanding financial discovery and to verify their interrogatory responses.

The Government is also seeking permission to take a deposition of Moshe Landau on financial discovery in addition to taking his deposition later in discovery on merits issues. Dkt. 673. Landau is uniquely positioned to testify about, among other things, his property interests in Israel, his purchase of the Malon Resort hotel, his purchase of 25 additional properties that he never disclosed to the Government, his ownership interest in scores of LLCs, and the recent mortgages he has taken on four properties for nearly $1.5 million.

* * *

The Government is evaluating any additional discovery requests that may be needed. The Government also anticipates taking 15-25 fact depositions, as well as Rule 30(b)(6) depositions of Defendants. Lastly, the Government is continuing to make rolling productions to the FCA

Defendants and continues to meet-and-confer with the FCA Defendants regarding the scope of the Government's productions.

### *Defendants' Position on Additional Discovery to be Completed.*

Defendants have made significant progress in all phases of discovery since the July 14, 2025 appearance. While Defendants experienced unanticipated delays because of email access issues, in the past four weeks, Defendants have produced over 1.7 million pages of discovery (this is in addition to the 1.6 million pages of discovery produced during the CID investigation), including financial and merits discovery. Defendants have continued to participate in weekly meet-and-confer sessions with the Government to ensure this case moves forward to resolution on the merits.

With respect to financial discovery, on August 4, 2025, Defendants made a supplemental production of over 6,400 pages, bringing Defendants' total financial discovery production to 19,384 pages. Defendants' financial production has been fulsome, including three years of bank account statements for Defendants as well as entities owned or controlled by Defendants. Defendants have also produced thousands of pages of documents containing mortgage information and real estate records. Defendants have acknowledged that there are a few remaining records, which Defendants have requested from third-parties. Defendants will produce those records promptly upon receipt.

With respect to merits discovery, Defendants have made even more significant progress, producing over 1.7 million pages of patient and claims documents, which go to the heart of the case. These documents include evidence of Defendants' efforts to collect patient insurance information prior to testing, as well as Defendants' subsequent efforts regarding insurance discovery.

While Defendants have been making rolling productions on a weekly basis, discovery from the Government has been slow in coming. Most notably, only yesterday did the Government produce the SAS code, which the Government acknowledges "Karen Lowe relied [upon] in her July 2024 and October 2024 declarations in support of the Government's FDCPA briefing and related SAS logs." This is remarkable. The Government relied upon the SAS code in declarations supporting nearly $50 million in writs but have only now provided the code. The Government's belated production prejudiced Defendants' ability to defend against the Government's writs application, which Defendants intend to raise in further briefing.

Additionally, the Government has not provided any custodial productions to date and has produced no communications between HRSA and HHS-OIG, or communications with Optum regarding Defendants. This is particularly problematic because the Government has raised vague deliberative process and relevance objections to Defendants' discovery requests. Defendants, however, cannot fully assess the import of the Government's objections until they receive the Government's actual production.

During the last conference, the Court attempted to front the issue by directing the parties to provide a privilege log for documents already produced by August 7, 2025. Yesterday, the

Government produced a three-line privilege log, seemingly avoiding the obligation to provide a privilege log by simply delaying its production. For these reasons, Defendants request that the Government be provided with an interim production deadline to ensure that its discovery is not further delayed.

**4. The status of settlement discussions.** The parties have discussed settlement but have not made any significant progress regarding potential settlement.

**5. The anticipated length of trial and whether the case is to be tried to a jury.** The parties' best estimate of trial remains four weeks.

**6. Whether the parties anticipate filing motions for summary judgment; and any other issue that the parties would like to address at the pretrial conference or any other information that the parties believe may assist the Court.** At this juncture, the Government is continuing to evaluate whether it will move for summary judgment. The FCA Defendants anticipate moving for summary judgment at the conclusion of discovery. The briefing schedule for summary judgment is set forth in Exhibit A, Dkt. 588.

We thank the Court for its consideration of these matters.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: /s/ Lawrence H. Fogelman
RACHAEL DOUD
LAWRENCE H. FOGELMAN
CHARLES S. JACOB
MOLLIE KORNREICH
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2725
Email: rachael.doud@usdoj.gov
lawrence.fogelman@usdoj.gov
charles.jacob@usdoj.gov
mollie.kornreich@usdoj.gov
danielle.marryshow@usdoj.gov

cc: Counsel of Record (by ECF)