

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

November 20, 2025

**BY ECF**
Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States of America v. LabQ Clinical Diagnostics, LLC, et al.*
              No. 22 Civ. 751 (LJL), No. 22 Civ. 10313 (LJL)

Dear Judge Liman:

      This Office represents the United States of America (the "Government") in this False Claims Act case. We write respectfully in response to Defendants LabQ Clinical Diagnostics, LLC, Dart Medical Laboratory, Inc., Community Mobile Testing, Inc., and Moshe Landau's ("Defendants") motion to stay this case pending the Second Circuit's resolution of Defendants' Petition for a Writ of Mandamus, ECF No. 792 (the "Stay Motion" or "Stay Mot."). Because the Government submits this response in advance of the deadline set by the Court, *see* ECF No. 798, the Government also respectfully requests that Defendants' time to reply to this submission be correspondingly modified to two business days from today.

      Defendants fall well short of meeting the high standard for a stay while a mandamus petition is pending, and the Court should therefore deny the Stay Motion. As explained below, all of the relevant factors weigh strongly against a stay. For one, Defendants are very unlikely to succeed on the merits of their mandamus petition. The burden for such petitions is extremely high and, as this Court has already held, Defendants' arguments regarding recusal are meritless. Further, the Government will be irreparably harmed by a stay because, as the Government has demonstrated through evidentiary submissions and further outlined below, Defendants are continuing to dissipate assets.

      ***Background.*** On September 5, 2025—after over a year of active litigation—Defendants moved to transfer venue of this action or, in the alternative, for judicial disqualification. ECF No. 708. After briefing and argument, the Court denied that motion on November 10, 2025. *See* ECF No. 773 ("Order"). On November 12, 2025, Defendants moved for, *inter alia*, a "60-[d]ay [a]dministrative [s]tay," claiming that they are "functionally unable to litigate this case at all" for economic reasons. ECF No. 774. On November 18, Defendants informed the Court that they were filing a petition for a writ of mandamus in the Second Circuit, seeking review of the Court's Order denying the recusal motion. ECF No. 791. That same day, Defendants moved for another stay, this time of all proceedings in this Court pending the Second Circuit's resolution of the mandamus petition. Stay Mot. at 1.

*Analysis.* The request for a stay should be denied. "In determining whether to grant a stay pending mandamus, district courts must consider the following four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *New York v. United States Dep't of Com.* ["*Dep't of Com.*"], 339 F. Supp. 3d 144, 147-48 (S.D.N.Y. 2018) (quoting *SEC v. Citigroup Glob. Mkts. Inc.,* 673 F.3d 158, 162 (2d Cir. 2012) (further internal quotation marks omitted)) (denying motion for stay of discovery pending resolution of writ of mandamus). The "most critical factors are whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Dep't of Com.*, 339 F. Supp. 3d at 148 (internal quotation marks omitted)).

The first factor poses a particularly high bar because, "to satisfy the likelihood-of-success requirement here, [the movant] must not only demonstrate that [the district court] erred in its decisions, but also that the Second Circuit is likely to grant mandamus." *Dep't of Com.*, 339 F. Supp. 3d at 148. And "[i]t is well-settled that the exceptional remedy of mandamus will only be invoked where the petitioner has demonstrated that its right to such relief is clear and indisputable." *In re Basciano*, 542 F.3d 950, 955-56 (2d Cir. 2008) (internal quotation marks omitted). In the context of a motion for judicial recusal, this means that for the Second Circuit to issue the writ, the petitioner "must clearly and indisputably demonstrate that the district court abused its discretion." *Id.* at 956 (internal quotation marks omitted).

Here, Defendants do not come close to meeting this standard. As this Court has already held, Defendants "[r]ecusal [m]otion is [m]eritless." Order at 30. Defendants thus have no likelihood of success on the merits in the Second Circuit given that the Court has already concluded that "none of [the stay applicant's arguments regarding recusal] have merit." *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 233 (S.D.N.Y. 2018). That is particularly true given that "mandamus petitions face an exceedingly high bar." *Id.*

Further, the Court carefully considered and analyzed Defendants' recusal motion. In a 39-page opinion issued after argument and briefing, the Court correctly concluded that Defendants did not establish that the Court has personal knowledge of a disputed evidentiary fact; that any family member of the Court's is likely to be a material witness; or that a reasonable person would conclude that the Court's impartiality could reasonably be questioned. Order at 30-39. Further, as the Court correctly held, the motion was plainly untimely because Defendants failed to move for recusal "at the earliest possible moment after obtaining knowledge of [the relevant] facts," *id.* at 29 (alterations in original; internal quotation marks omitted); the information underlying the recusal motion has been in Defendants' possession since the beginning of the case; and Defendants even circulated a draft recusal motion to the Government in May 2025, but waited to file the motion until September 2025, after a string of losses before this Court, *id.* at 25-29. Thus, for all of these reasons, the first factor weighs heavily against a stay. *See Oakley v. MSG Networks, Inc.*, No. 17 Civ. 6903 (RJS), 2023 WL 4373261, at *1 (S.D.N.Y. June 26, 2023) (denying request for stay pending resolution of mandamus petition relating to recusal motion, noting that "[a]s to the likelihood of success on the merits, the Court carefully considered [the] recusal request").

With respect to the second factor, Defendants have not shown that they will be irreparably harmed if the case proceeds while the mandamus petition is pending. Contrary to Defendants' suggestion, *see* Stay Mot. at 2, the fact that Your Honor will continue presiding over this case while a mandamus petition relating to a recusal motion is pending does not constitute irreparable harm—otherwise, a stay would be appropriate in every such case.[1] While Defendants vaguely assert that they will be harmed if this Court rules on the motions currently pending before it, they do not explain specifically what harm they would suffer beyond general "wasted resources." *See* Stay Mot. at 2. But the resources necessary to continue with discovery would be needed before any judge. And "[t]he prospect of burdensome or expensive discovery alone is not sufficient to demonstrate irreparable injury." *Dep't of Com.*, 339 F. Supp. 3d at 149 (internal quotation marks omitted; alteration in original).

Importantly, the third and fourth factors also weigh heavily against a stay here. The Government's ability to ultimately recover funds for the public fisc will be substantially harmed by a stay. That is because a stay of the case increases the risk that by the time judgment is entered, Defendants will have further dissipated their assets and significantly diminished the chances of the Government recovering funds fraudulently obtained by Defendants. These are not abstract concerns. Defendants recently mortgaged nine properties from April to June of 2025 for $2.8 million and used the funds for a variety of purposes, including transferring substantial funds to other entities Landau owns. *See* ECF No. 732 at 6-7; ECF No. 795 at 2. Defendants have also continued to make payments out of accounts subject to writs to other entities Landau owns, in direct contravention of the Court's August 2, 2024, Order, even after being held in contempt for doing precisely that. ECF No. 795 at 3. They are also presently attempting to alienate the Malon Resort hotel, an asset they own worth more than $14 million, as reflected by a contract of sale for the Malon Resort that the Government obtained not from the Defendants, but rather in response to a subpoena to a title company. See ECF No. 756 at 16-17. The Government has applied for a prejudgment writ of attachment on that property, to ensure that its value can be preserved for the Government's potential recovery. Second Supplemental Application for Prejudgment Remedies, ECF No. 756, at 16-17, 35. A stay would prevent issuance of that writ.[2]

Moreover, Defendants have continued a pattern and practice of moving properties out of their own names, as reflected by the twenty-five properties they claimed that entities including NJJ Institutions or Congregation Kolel owned, right until the time when Landau mortgaged nine of

---

[1] Defendants cite *In re Int'l Bus. Machines Corp.*, 618 F.2d 923 (2d Cir. 1980), on this point, but that case does not support their argument. Rather, the quoted language relates to the Second Circuit's determination that mandamus generally may be appropriate for consideration of whether judicial disqualification is necessary. *Id*. at 926-27.

[2] Another creditor has recently prevailed in a summary judgment motion in a breach of contract action against defendant LabQ Clinical Diagnostics, LLC. *See* Memorandum and Order, Dkt. No. 285, *PerkinElmer Health Sciences Inc. v. LabQ Clinical Diagnostics*, LLC, 22 Civ. 11412 (D. Mass Sept. 16, 2025). This creates the risk that a different creditor may be able to secure its judgment against the Malon Resort before the Government can obtain a writ on this property. This possibility further prejudices the Government by jeopardizing the Government's ability to protect its ability to recover fraud proceeds on behalf of the public fisc through a prejudgment writ.

them as the sole member of the LLCs holding these properties between April and June of 2025 and then disposed of the mortgage proceeds, thereby eliminating equity in those properties. ECF No. 678, 8-9, 11-14; ECF No. 732, at 5-12; ECF No. 351-5. This is recent conduct, which underscores its likelihood of recurring. All of these illustrative transfers occurred in the past few months, and the Government has already informed the Court that it plans to file another motion for contempt of the August 2024 Order in light of these violations, *see* ECF No. 795 at 3 n.3, which have continued even after the Court held Defendants in contempt of that Order in July 2025.

More generally, a stay would needlessly delay resolution of this action and, by extension, the Government's ability to collect on a judgment. As illustrated above, contrary to Defendants' assertion, *see* Stay Mot. at 3, the Government's interests are far from "fully protected" from dissipation of assets—the Government currently has writs restraining properties worth only a fraction of its potential recovery in this action, and Defendants have wrongfully dissipated even assets that are subject to writs, as the Court held when determining that Defendants were in contempt of the August 2024 Order. *See* ECF No. 574. This Court has already determined the probable validity of a debt of up to $109.8 million, *see* Opinion and Order on Application for Prejudgment Remedies, ECF No. 357 ("Writs Decision"), at 88-89, and Defendants do not suggest that the value of currently restrained assets is anywhere close to that amount. Further, during the pendency of any stay, the Government will be without a remedy for recent violations of Court orders, and each wrongful transfer by Defendants during the pendency of the stay to shell companies will "render the chain of ownership more obscure, forcing the Government to attempt to locate numerous real properties and continue to monitor ongoing real estate transactions and transfers to other limited liability companies, [and] sort through a web of limited liability companies and their nominal and actual ownership structures." Writs Decision at 94.

There is also reason to believe that, if entered, a stay may last for a significant period of time. For example, in one mandamus petition based on recusal that was filed in the Second Circuit, the Second Circuit summarily denied the petition without requiring a response from the respondent—but took approximately five months to do so. *See In Re: Monique Moore,* Case No. 12-5020 (2d Cir.) (petition filed on December 1, 2012, ECF No. 1, and order dismissing petition issued on April 10, 2013, ECF No. 29). Thus, there is a significant risk that a stay would halt this case for many months.

A lengthy stay also risks harm to the Government's ability to effectively collect and present evidence. That is particularly so here, where there is substantial outstanding discovery and Defendants recently represented to the Court that they "have been unable to perform even the most basic functions necessary to maintain compliance, preserve evidence, and sustain their ability to litigate this case." ECF No. 774 at 4. Defendants' ability to locate and produce documents and information in response to discovery demands may be substantially worse months from now.

Accordingly, because each of the four factors strongly weighs against grant of the requested stay, the Stay Motion should be denied.

***Deadline for Defendants' Reply Submission.*** Additionally, the Government respectfully requests that Defendants' time to reply to this motion be modified. This Court previously ordered the Government to respond to the Stay Motion by November 24, 2025, and for Defendants to reply

by November 26, 2025. ECF No. 798. In light of the Government's early submission and Defendants' ongoing dissipation of assets, however, we respectfully request that Defendants' reply be due two business days from today, on November 24, rather than on November 26.

The Government thanks the Court for its consideration of this matter.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney for the
        Southern District of New York

By: */s/ Mollie Kornreich*
    RACHAEL DOUD
    LAWRENCE H. FOGELMAN
    CHARLES S. JACOB
    MOLLIE KORNREICH
    DANIELLE J. MARRYSHOW
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, NY 10007
    Telephone: (212) 637-2725
    Email: rachael.doud@usdoj.gov
          lawrence.fogelman@usdoj.gov
          charles.jacob@usdoj.gov
          mollie.kornreich@usdoj.gov
          danielle.marryshow@usdoj.gov

cc: Counsel of Record (by ECF)