

## ZELL & ASSOCIATES
### INTERNATIONAL ADVOCATES LLC
AN AFFILIATE OF FANDZ INTERNATIONAL LAW GROUP
International Attorneys & Notaries

November 25, 2025

**VIA ECF/CM**
Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States of America v. LabQ Clinical Diagnostics, LLC, et al.*, No. 22 Civ. 10313 (LJL)

Dear Hon. Judge Liman:

Our firm represents LabQ Clinical Diagnostics, LLC ("LabQ"), Community Mobile Testing, Inc. ("CMT"), Dart Medical Laboratory, Inc. ("Dart Medical"), and Moshe Landau (collectively, the "Defendants"). Defendants respectfully submit this reply letter in further support of their Letter Motion to stay all proceedings pending the Second Circuit's disposition of Defendants' Petition for a Writ of Mandamus. *See* Dkts. 792, 797 and 803.[1]

The Government's opposition attempts to recast a straightforward and modest request for a temporary pause as an emergency threat to the United States. Its narrative is exaggerated, unsupported, and incomplete. The Government does not—and cannot—explain why it is entitled to continue litigating aggressively before a Court whose disqualification is presently under appellate consideration. Nor does it grapple with the substantial risk that continued proceedings will require relitigation, will produce void or vacated orders, and will inflict irreparable harm on the integrity of the judicial process. Defendants seek a short, targeted stay, not a multi-year delay, not a litigation freeze to evade obligations, and not relief from existing restraints. They seek

---

[1] The docket entry for the Government's submission (Dkt. 803) is inaccurate. Although labeled as a "Letter Motion to Expedite," the document is, in substance, a reply to Defendants' letter motion (Dkt. 792), with a brief request for expedition appended at the end. The Government did not file a standalone motion to expedite; its filing was mischaracterized on the docket.

**New York** I **Washington, D.C.** I **Toronto** I **Moscow** I **Tallinn**

New York Office: 1345 Ave. of the Americas I New York, NY 10105 I Tel.: (212)–971-1349 I Fax: (212)-253-4030 I

*Letter reply to Dkt. 803*
*November 25, 2025*
*Page 2*

only to avoid litigating under the cloud of an unresolved recusal dispute. The four relevant factors overwhelmingly support a stay.

## I. Defendants Have Shown a Sufficient Likelihood of Success on Their Mandamus Petition for Purposes of a Limited Stay

The Government's position reduces to: because this Court denied the recusal motion, Defendants must necessarily lose. That is not the law. Mandamus exists precisely because district courts may, in rare circumstances, reach conclusions on recusal that warrant independent appellate review. Without revisiting the full set of arguments raised, it is enough to note that Defendants' petition presents a serious, good-faith question under § 455—one that is neither manufactured nor frivolous. The issue involves the Court's own factual exposure to matters the Government identifies as central to the case, and reasonable jurists could differ on how the appearance-of-impartiality standard applies. A temporary stay simply preserves the Second Circuit's ability to address that non-frivolous question without this Court issuing further rulings that may need to be revisited depending on the appellate outcome.

Defendants fully recognize that this Court has already engaged with the recusal question and set out its reasoning in a written decision. Nothing in this reply seeks to re-litigate that analysis. But the very fact that the Court has necessarily evaluated the issue through the lens of its own knowledge and experience is what makes independent appellate review essential. A three-judge panel of the Second Circuit, approaching the matter without personal involvement in the underlying facts, may reasonably assess the appearance-of-impartiality standard differently—even where this Court, in good faith, does not perceive any basis for disqualification. *See* Melinda A. Marbes, *Reshaping Recusal Procedures: Eliminating Decisionmaker Bias and Promoting Public Confidence*, 49 VAL. U. L. REV. 807, 810 (2015) (requiring a judge to evaluate his own actual or apparent bias creates a "risk of systematic error" because objectivity about one's own biases is "virtually impossible" due to the Bias-Blind-Spot effect); Charles Gardner Geyh, *Why Judicial Disqualification Matters. Again.*, 30 REV. LITIG. 671, 708-09 (2011) (explaining that judges applying an appearance-of-bias test may underestimate how their conduct appears to others because actors assess themselves through introspection while observers rely on external cues, leading judges to overvalue their own subjective perceptions of impartiality).

A short stay simply preserves that opportunity for neutral review without entangling this Court in further merits, discovery, contempt, or sanctions rulings that, if the appellate court sees the issue differently, could require unwinding. The request is thus but a recognition that recusal questions—especially those involving a judge's own factual exposure—are

*Letter reply to Dkt. 803*
*November 25, 2025*
*Page 3*

uniquely suited to appellate consideration, and that proceeding without a pause risks unnecessary complications for all involved.

### II. Defendants Will Suffer Irreparable Harm Absent a Stay

The harm is not simply wasted resources. It is the fundamental constitutional injury that occurs when parties are forced to litigate before a tribunal whose impartiality is under appellate review. *Cf. In re Al-Nashiri*, 921 F.3d 224, 238 (D.C. Cir. 2019) (noting that recusal errors cause inherently irreparable harm because a party forced to litigate before a disqualified judge cannot later be made whole, and any resulting orders must be suppressed if recusal was required).

Moreover, a host of significant motions remain pending before this Court—including (1) the Government's request for contempt remedies related to the first contempt motion (Dkt. 584); (2) the Government's second contempt motion (Dkts. 524–25); (3) Defendants' motions for relief from the prejudgment writs (Dkts. 721, 748, 786); and (4) Defendants' motion to compel discovery (Dkts. 788–89). If the Court were to resolve any of these while the mandamus petition is under consideration, those rulings may later require reconsideration or vacatur, creating precisely the kind of wasted effort and duplication that a short stay is designed to avoid. A brief stay simply preserves the status quo and prevents compounding financial and procedural harm that no subsequent order can remedy.

### III. The Government Will Not Be Prejudiced by a Short, Targeted Stay

This factor overwhelmingly favors Defendants. The Government's opposition reads as though this case were already post-judgment—as if a jury had found Defendants liable for fraud and the United States were simply fighting to preserve an imminent recovery. That is not the posture of this litigation. This is a *prejudgment* case in which liability has not been adjudicated, no finder of fact has credited the Government's allegations, and the prejudgment writ regime—on which the Government now leans so heavily—remains contested. Although this Court denied Defendants' motion to dissolve or modify the writs in March 2025, that ruling did not convert those provisional remedies into a presumption of liability, nor did it entitle the Government to treat the case as if in its pocket. It is against *this* backdrop—the actual procedural posture of a still-unresolved FCA action—that the Government's claims of asset-dissipation prejudice must be evaluated.

*Letter reply to Dkt. 803*
*November 25, 2025*
*Page 4*

Most of the Government's allegations concern transactions from April–August 2025—months before Defendants filed this stay motion.[2] None of those events occurred because litigation was paused; to the contrary, they occurred while the case was fully active. The Government's attempt to repurpose those months-old facts now, as grounds to oppose a short appellate stay, is both stale and illogical. If active litigation did not prevent the conduct about which the Government now complains, it cannot plausibly argue that continuing to litigate during the pendency of mandamus is necessary to prevent similar conduct.

Equally important, the Government's rhetoric ignores the actual posture of the case. The Government has already secured approximately $40 million in prejudgment writs and garnishments—a massive restraint that dwarfs the hypothetical risks the Government now invokes. These existing restraints already provide more than sufficient protection during a short, targeted stay. The Government cannot seriously claim imminent danger of dissipation while simultaneously holding tens of millions of dollars in frozen assets. The reality is that the $40 million already frozen far exceeds what is necessary to quell any reasonable concern about interim dissipation.

Further, the Government cannot selectively rely on the writs to assert prejudice while disregarding the fact that the writ regime itself is presently under challenge. *See* Dkts. 721, 786.[3] Defendants have sought to modify or dissolve the restraints on multiple grounds, and those issues remain pending. Given this backdrop, the assertion that a temporary stay threatens the public fisc lacks any factual or logical foundation.

### IV. The Public Interest Strongly Favors a Stay

The public interest decisively favors a stay because preservation of judicial integrity in a case of this magnitude is paramount.[4] This Court has

---

[2] The Government largely regurgitates what is argued in its letter reply at Dkt. 795. However, Defendants responded to those arguments in detail in their November 20, 2025 letter at Dkt. 800.

[3] *See* Defendants' Reply in Further Support of Their Motion to Release the Writs of Attachment and Garnishment (Dkt. 786), at Sections B and C (showing that the Government's 315,526-claim "match" theory collapses once basic identifiers are applied: the number of valid matches falls from 315,526 to 46,854, an error rate of nearly 85%, and further demonstrating that approximately 204,408 of Lowe's own purported "matches"—over 65%—are Medicaid enrollees whom HRSA expressly instructed providers to submit to the UIP, rendering those claims legally non-false and incapable of supporting any "probable validity" finding under the FDCPA

[4] The "magnitude" of this case is not defined solely by the Government's claimed dollar figures. Its significance stems from what this litigation necessarily exposes about the federal Government's own administration—and misadministration—of the Uninsured Program, including systemic design failures and the role of its contractor in processing claims during an unprecedented public-health emergency. In this sense, the case places not only Defendants' conduct under scrutiny, but the Government's as well. This dual posture heightens, rather

already recognized as much. *See* Transcript, Oral Argument, October 22, 2025, at 4:13-18. Nothing about the posture of this litigation has changed to diminish the force of that reasoning. The same considerations that led the Court to stay its hand then—avoiding unnecessary substantive rulings while a foundational question was under review—apply with equal, if not greater, force now that the issue has been placed before the Court of Appeals. A brief stay pending mandamus review serves the public interest by ensuring that all further proceedings occur under conditions that command full confidence in the tribunal's neutrality and the integrity of the process.

## CONCLUSION

For these reasons, a stay is appropriate and necessary to protect the integrity of this proceeding while the Second Circuit considers the petition for mandamus. Defendants respectfully request that the Court stay all proceedings pending the appellate court's resolution of the petition. Defendants also note that the entry of a short stay would materially facilitate the parties' ability to explore potential settlement discussions before a Magistrate Judge as discussed at the court hearing on November 20, 2025. Proceeding with such discussions before a Magistrate without a stay would be significantly more difficult.

Respectfully submitted,


/s/ *Noam Schreiber*
_____

Noam Schreiber
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES, LLC
800 Connecticut Ave., N.W.
Suite 300
Washington, D.C. 20006
Email: noam.schreiber@fandz.com

| | |
|---|---|
| Jeffrey E. Michels | L. Marc Zell, *of Counsel* |
| ZELL & ASSOCIATES INTERNATIONAL | ZELL & ASSOCIATES INTERNATIONAL |
| ADVOCATES, LLC | ADVOCATES, LLC |
| 1345 6th Avenue 2nd Floor | 800 Connecticut Ave., N.W. |
| New York, New York, 10105 | Suite 300 |
| Telephone: (212) 971-1349 | Washington, D.C. 20006 |
| jmichels@fandz.com | Email: mzell@fandz.com |

cc.: Counsel of Record

---

than diminishes, the public interest in ensuring that all proceedings are overseen by a tribunal whose impartiality is beyond question.